Industrial Union Oil Company v. Commissioner. C. R. Miller v. Commissioner. Virginia J. Miller v. Commissioner.
Industrial Union Oil Co. v. Commissioner
Docket Nos. 7167, 7168, 7169.
United States Tax Court
1946 Tax Ct. Memo LEXIS 57; 5 T.C.M. (CCH) 879; T.C.M. (RIA) 46251; October 16, 1946
*57 John C. Dawson, Esq., and Glenn Y. Davidson, C.P.A., 1017 Chronicle Bldg., Houston 2, Texas, for the petitioners. Donald Abbey, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: These proceedings were consolidated at the time of the hearing. They involve deficiencies in corporation income and declared value excess profits taxes for the calendar years 1939, 1940, 1941 and 1942 in the total amount of $6,765.59, itemized as follows: Declared Value
Excess-Profits
Year
Income Tax
Tax
1939
$ 835.44
$ 765.38
1940
662.49
572.37
1941
1,137.08
693.48
1942
1,388.26
711.09
Totals
$4,023.27
$2,742.32 In addition thereto there are individual income tax deficiencies for 1939, 1940 and 1941 of $586.16, itemized as follows: Year
C. R. Miller
Virginia J. Miller
1939
$ 70.28
$ 70.28
1940
41.86
41.86
1941
180.94
180.94
Totals
$293.08
$293.08
It is stipulated that the issue in the case of petitioner C. R. Miller, Docket No. 7168, and Virginia J. Miller, Docket No. 7169, depends upon and will be determined by the decision in the case of petitioner Industrial Union Oil *58 Co., Docket No. 7167. The first question involved is whether income from certain oil leases held in the name of the corporation is taxable to the corporation or to its sole stockholder, C. R. Miller. The second question is whether income from certain oil properties held in the name of R. H. Goodrich and applied to liquidate the debt of C. R. Miller is income to the corporation or to Miller. Should the answer to the first or second question be that the income is taxable to the corporation, then a third question is presented as to whether or not certain expenditures made by the taxpayer are allocable to the income of the corporation. Findings of Fact Petitioner corporation was incorporated under the laws of Texas in 1936 and continued until its dissolution in 1944. It filed corporation income and excess profits tax returns for the taxable years 1939, 1940, 1941 and 1942 on the basis of cash receipts and disbursements with the collector of internal revenue for the first district of Texas, and reported no taxable income thereon. It also filed fiduciary returns for the respective years. On January 1, 1939, C. R. Miller of Houston, Texas, became the owner of all the capital stock *59 of petitioner corporation and continued to own all such stock until the date of dissolution. On January 1, 1939, the stockholders and directors of petitioner in joint meeting adopted the following resolution: RESOLVED that the stockholders and directors of Industrial Union Oil Company recognize the fact that all the properties standing in the name of Industrial Union Oil Company, or to which it will have legal title, will not in fact beneficially belong to Industrial Union Oil Company, but that said corporation is to hold legal title thereto in trust and as agent for Mr. C. R. Miller and such person or persons as may have interest by, through or under the said Mr. C. R. Miller; and recognize also, that Industrial Union Oil Company is under duty to transfer such legal title at such time as said Mr. C. R. Miller may direct; and the Board of Directors and Officers of said corporation are authorized and employed in so far as such authority of power may be necessary or advisable, to transfer or cause to be transferred by suitable instruments, all or any part or parts of the legal title held by Industrial Union Oil Company to all properties of any sort, said transfer to be made to the *60 person or persons, corporations or firms as may be instructed or directed by Mr. C. R. Miller; the consideration for such transfer being in fact that such properties do not actually belong to Industrial Union Oil Company, but are held by it in trust and as agent for Mr. C. R. Miller. At the time Miller acquired the stock of petitioner corporation, it had no assets whatsoever. Miller forthwith deposited to the credit of petitioner corporation in the Citizens State Bank of Houston the sum of Six Hundred Dollars to constitute its capital. Except to correct a mistake of $10 this sum was never spent by the corporation and remained on hand at its dissolution. After acquiring the stock of petitioner corporation and after the above quoted resolution had been adopted, Miller caused to be transferred to the petitioner corporation without consideration his royalty interests in 23 oil properties. These royalty interests were held previously for Miller by and in the name of R. H. Goodrich. During the years 1939, 1940, 1941 and 1942, petitioner corporation received the payments made by the various oil companies purchasing the oil runs from the aforesaid properties. Said payments, which were *61 in the form of checks made payable to Industrial Union Oil Company, were deposited by petitioner corporation in its bank account with the Citizens State Bank of Houston, Texas. From time to time petitioner corporation disbursed the full amounts so received to C. R. Miller by checks. Petitioner corporation, during said years, received monthly statements from the Citizens State Bank of Houston, Texas. Petitioner corporation executed such customary transfer or division orders as were required by the producers of the oil to cause the payments to be made to petitioner corporation from the aforesaid properties. Ad valorem, capital stock and franchise taxes were paid by C. R. Miller personally for the corporation as were all other expenses of the corporation. However, the fiduciary returns filed by the corporation claimed certain of these expenses to have been paid by the corporation. The corporate charter of Industrial Union Oil Company did not authorize it to act as trustee. Its records consisted of penciled memoranda, the minute book, deposit slips, the check book and the cancelled checks. It had a bank account with the Citizens State Bank of Houston, Texas, wherein were deposited *62 all the amounts shown as being received by it in its fiduciary returns for the taxable years. In addition to his royalty interest in the 23 oil properties which he caused to be transferred to the petitioner January 1, 1939, Miller owned other royalty interests which were held by Goodrich as security for a debt owed to him by Miller of approximately $10,000. The royalty payments received by Goodrich from these properties and the proceeds from the sale of some of the leases were applied by Goodrich against this indebtedness until it was liquidated in May 1941. Thereafter Goodrich continued to receive payments from the royalty interests held by him until they were transferred to the petitioner corporation in 1942. The amounts so received less certain expenses were paid by Goodrich to the petitioner corporation and deposited in its bank account. There was also deposited in the bank account of petitioner corporation in 1939 income from certain "back runs" from properties held by Goodrich. The total amounts derived from properties held by Goodrich but deposited in the corporation bank account were as follows: 1939
$798.66
1940
None
1941
687.39
1942
743.46
The amounts *63 of oil and gas royalties received by the petitioner corporation from leases that were actually held by it during the taxable years in question and deposited in its bank account were as follows: 1939
$3,963.46
1940
3,727.56
1941
5,094.75
1942
7,039.74
The income received by Goodrich (including income from sales by him of oil and gas leases) from properties held in his name and applied against Miller's debt to him was included in the fiduciary returns of petitioner corporation in the following amounts: Income
Income from
from gas
sale of
and oil
oil and gas
Other
royalties
leases
income
Total
1939
$4,444.71
$4,444.71
1940
$1,077.41
1,954.17
$35.17
3,066.75
1941
50.92
1,907.49
1,958.41
1942
8.43
83.33
91.76
$9,561.63
In its fiduciary returns the petitioner corporation reported both the income which it received from properties held by it and paid over to Miller and the income received by Goodrich from properties held by him (including income from sale of oil and gas leases) and applied against Miller's debt. It also included the income derived from properties held by Goodrich which was *64 deposited in the corporation bank account. Deductions for depletion, taxes, lease rentals, recording fees, etc., were claimed on the fiduciary returns in the following amounts: Depletion
From sale
sale of oil
From oil
Other
and gas
and gas
deduc-
Year
leases
royalties
Taxes
tions
1939
$1,222.30
$1,309.58
$119.91
1940
537.40
1,321.37
208.13
$257.39
1941
524.56
1,604.09
145.95
87.34
1942
2,142.70
162.09
58.10
The net income shown on the corporation's fiduciary returns, after depletion and claimed deductions, was as follows: 1939
$6,555.04
1940
4,470.02
1941
5,378.61
1942
5,512.07
Petitioner C. R. Miller reported in his income tax returns for the years 1939, 1940 and 1941 his community one-half of the net income shown on the corporation's fiduciary returns. One-half of said amount was reported on the individual income tax returns of Virginia J. Miller, wife of C. R. Miller. Opinion Since it is stipulated that the decision in Industrial Union Oil Co., referred to as the corporation, Docket No. 7167, will control the decision in the companion cases consolidated therewith, we will first *65 consider the issues in that case. The corporation reported no income in its income and excess profits tax returns filed for the respective years before us. But in its fiduciary returns it included both the income received by it from the properties held in its name and the income from the properties held by Goodrich and applied to liquidate the indebtedness of Miller, and claimed percentage depletion thereon. The net income so reported in the fiduciary returns was paid over to Miller and reported in the community returns of Miller and his wife. In computing the deficiencies here in question the respondent refused to recognize a fiduciary relationship between the corporation and Miller. He treated Miller as a stockholder of the corporation and the payments made to him as dividends. He determined that the corporation was taxable on all the income reported in its fiduciary returns including both the income it received from the leases held by it and the income received by Goodrich and applied against the indebtedness of Miller to him. The corporation contends that it had no income producing properties and received no income taxable to it during the years before us; that it held the *66 23 oil leases transferred to it January 1, 1939, for the benefit of Miller, its sole stockholder, as agent or trustee, and, that the income from such leases was Miller's income and taxable to him. The respondent relies on , which lays down the rule, bottomed on corporate entity, that where a corporation is engaged in business it has a "tax identity" distinct from its stockholder and gain to the corporation can not be treated as gain to the stockholder. In the Moline case "there was no actual contract of agency nor the usual incidents of agency relationship" and the Court said that "the mere fact of the existence of a corporation with one or several stockholders, regardless of the corporation's business activities, does not make the corporation the agent of its stockholders." Undoubtedly, the rule laid down in the Moline case is thoroughly sound, but in our judgment it has no application under the facts of the case before us. Here it was specifically provided by appropriate resolution of the corporate Board of Directors that all properties standing in the name of the corporation or to which it will have legal title *67 should not belong to the corporation but would be held by it as agent of trustee for Miller and would transfer the legal title to such property at such time as Miller may direct. At the time Miller acquired the corporate stock from Goodrich the corporation had no assets. Subsequently Miller placed to its account $600 which was never used by the corporation and was on hand when in 1944 it was dissolved. The 23 oil leases to which it held title were transferred to it by Miller without consideration after the adoption of the above resolution. During the years before us Miller paid the corporate taxes and other expenses. The corporation collected the oil royalties from the leases which it held and turned over the entire proceeds to Miller. The petitioner does not contend that it was not a distinct corporate entity nor does it seek to have its corporate entity disregarded. It stands on the perfectly simple proposition that the property involved was in fact the property of Miller and the income therefrom taxable to him. We think it is fundamentally correct to assume that where income is derived from property, the basic test for determining who is to bear the tax is that of ownership. *68 Cf. ; . In the instant case it is obvious that the oil leases standing in the name of the corporation were in fact the property of Miller and that the corporation acted for Miller in collecting the royalties and paying them over to him. Whether the relationship was one of agency or of trust is immaterial. . In , the Court said: We cannot too often reiterate that "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed - the actual benefit for which the tax is paid." . And it makes no difference that such "command" may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, or the maintenance of effective benefit through the interposition of a subservient agency. * * * Here the actual command over the oil leases and the income derived therefrom was unquestionably in Miller. It was in *69 fact his property. But if this is true of the income from property held by the corporation it is obviously true of the income from property held by Goodrich. The corporation had no interest whatever in that property. It is clear from the facts that these properties were held by Goodrich for Miller and the income from both royalties and sales was applied in liquidation of Miller's debts. Such income was constructively received by Miller and is taxable to him. It is true, as contended by the respondent, that the action of the corporation in including the income from the properties held by Goodrich in its fiduciary returns is not very satisfactorily explained in the record. We are inclined to believe that it was, as Miller testified, to keep his chips in one basket. In any event, the facts in the record show that both the property held by the corporation and that held by Goodrich was held for Miller. We therefore hold that all the income reported in the fiduciary returns was Miller's income and not taxable to the corporation, and since the beneficial ownership of the oil properties was in Miller, he is entitled to the allowable percentage depletion. *70 Cf. ; ; . Decision will be entered under Rule 50.